# Coyle *v.* Pittsburg, Bessemer and Lake Erie Railroad Company, Appellant.

*Appeals—Assignments of error—Exception to admission of evidence.*

The Superior Court will not consider an assignment of error to the admission of evidence, where no exception to the admission of the evidence appears upon the record.

*Waters—Diversion of waters—Loss of profits.*

Loss of profits in a business cannot be considered in a suit to recover damages for injuries sustained by reason of the diversion of water from its natural course so as to obstruct a street.

In an action to recover damages for injuries sustained by the diversion of water, the court charged "the inconvenience of the dampness may possibly have had some effect upon his (plaintiff's) business. If so it would be an element of damage." There was no evidence whatever that the plaintiff lost patronage, or sustained any loss in his business by reason of the dampness of his premises. *Held*, that the instruction was reversible error.

*Railroads—Liability for defective sewer.*

Where a railroad company takes possession of a railroad built by another company, and there is under the railroad a defective sewer, the company will be responsible for the defective sewer after it takes possession.

Argued May 10, 1901. Appeal, No. 70, April T., 1901, by The Pittsburg, Bessemer and Lake Erie Railroad Company, from judgment of C. P. No. 2, Allegheny Co., Jan. T., 1899, No. 850, on verdict for plaintiff in case of J. P. Coyle v. The Pittsburg, Bessemer and Lake Erie Railroad Company, Appellant, and the Borough of East Pittsburg. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass to recover damages for injuries resulting from diversion of water. Before WHITE, P. J.

At the trial it appeared that the plaintiff was the lessee of a hotel at the corner of Braddock avenue and Arbor street in the borough of East Pittsburg. He claimed that he was injured by the diversion of water so as to concentrate an unusual flow down Arbor street.

The court admitted, without any exception, however, to the admission, the following evidence:

" Q. Was the street passable at all for public travel, foot or wagons? A. No, sir, at times it was not. It has never been— that is, Arbor street proper has never been permissible for foot or wagon travel since August, 1897. Q. How long has it not been since then? A. It has never been since then. That is, a portion of it above the railroad. Q. Now, Mr. Coyle, how did it affect your hotel business? (Objected to. Objection overruled.) A. About $7.00 a day in sales. Q. How did it affect it as to public patronage? A. That is what I have reference to."

Mr. Smith : I ask your honor to strike that out.

The Court : That will not do. It is a simple guess.

The Witness : That is based on my sales, your honor.

The Court : No, you must give the facts upon which you make that estimate.

Mr. Davis : " Q. Mr. Coyle, do you know what your business was just prior to the closing of this street? A. I do, sir. Q. What your receipts were—will you state what they were?" (Objected to.)

Mr. Davis : Plaintiff offers to show, following the question, that a large portion of the patronage of his house came from what is know as the terrace on the hill, and that that trade was diverted and carried down another street, so as not to be able to patronize his house at all, to be followed by further proof as to the names of the persons that patronized his hotel from that locality.

Mr. Smith : Objected to, because the offer does not state by whom or by what the patronage was diverted.

The Court : The mere fact that there was a falling off of patronage does not show that it was the result of stopping up Arbor street. It may have resulted from various other causes. If he can show that certain customers were in the habit of coming to his house along that street, and that after it was destroyed or stopped up they ceased to come to his hotel, that would be some evidence and I would allow it. Of course, there must be the number of persons and why they came to his hotel—whether to stop over night as strangers or lodgers, or to get meals, or to get drinks.

Mr. Davis : " Q. Mr. Coyle, can you tell the jury the names of persons who patronized your hotel prior to the closing of Ar-

bor street, and who were not able to patronize the hotel afterwards, after the closing? A. Yes, sir, I would enumerate men who have told me their names. Q. Tell the jury who the persons were—their names. A. I had a large patronage from the manufacturing plant, that used to come up that way. It was the nearest approach to their homes. Once Arbor street was obstructed, the next street is at least fully two blocks away that goes up the hill. They went up that street and around the other way. Mr. Coleman Welsh and Mr. Price; Mr. Robinson used to call in every evening. Mr. Mabon, Mr. Ham Jackson oft times called in, and various other ones I now forget. This is a concern I was not thinking of at all. Q. Can you give the jury about the number of such persons that patronized your hotel before, that did not travel that street afterwards and patronize it? A. I think at least twenty-five, some whose names I didn't know. Others I did know. Speaking positively I think at least that many every day was diverted from my place of business. Q. What would be the loss, the direct loss from that patronage per day.) (Objected to as incompetent and immaterial."

The Court: "Q. What did they call at the hotel for—what patronage did they give to the hotel? A. About $7.00 a week to the best of my knowledge." [6]

The court in the course of the charge said:

But the inconvenience of the dampness may probably have had some effect upon his business; if so, it would be an element of damages. [5]

Defendants' points were as follows:

1. That under all the evidence the verdict must be for the defendants. *Answer:* Refused. [1]

2. That as there is no evidence as to where the Pittsburg, Bessemer and Lake Erie Railroad Company was organized and commenced to operate its railroad, there can be no verdict against it. *Answer:* Refused, for reasons explained in the charge. [2]

4. There can be no recovery by the plaintiff for loss of patronage of his hotel. *Answer:* Affirmed, as to loss of patronage from obstructions in Arbor street. [3]

5. Plaintiff cannot recover for anything except injury to his leasehold from May 1, 1897, to April 1, 1898. *Answer:* Refused. [4]

Verdict and judgment for plaintiff against the Pittsburg, Bessemer and Lake Erie Railroad Company for $1,048. The Pittsburg, Bessemer & Lake Erie Railroad Company appealed.

*Errors assigned* were (1–5) above instructions. (6) Admission of evidence as above.

*Edwin W. Smith,* with him *Knox & Reed,* for appellant.— Upon examination of the testimony as to the loss of patronage it is seen that it is utterly indefinite as to reasons for the change of patronage, if such there was. This testimony was largely brought out by the court, and went to the jury with its sanction. It cannot be a proper measure of damage in this case: Pittsburg & Lake Erie R. R. Co. v. Jones, 111 Pa. 204; Gold v. Philadelphia, 115 Pa. 184.

*L. L. Davis,* for appellee, presented no printed argument.

OPINION BY RICE, P. J., October 14, 1901:

This was an action of trespass. The plaintiff was the lessee of hotel premises which fronted on Braddock avenue and extended back along the line of Arbor street about sixty-four feet. At the rear of the plaintiff's premises Arbor street turns to the right and goes up a steep grade. At a distance of about 110 feet from Braddock avenue, at a point where the ground is from forty to fifty feet higher than Braddock avenue, Arbor street was crossed by a railroad, now operated by the defendant company but originally constructed by the Butler and Pittsburg Railroad Company. At this point a cut was made of about seven and a half feet, and in order to protect the railroad a ten-inch pipe, afterwards replaced by a twenty-four-inch pipe, was laid under the railroad. The plaintiff contended that in consequence of this construction a greater quantity of water was brought down Arbor street, and was so changed from its natural course and concentrated as to be cast upon his premises, thereby flooding his cellar, filling a well with sediment, mixing gravel and sand with his coal, carrying mud and débris into his barroom, rotting the floors and making the premises damp. He claimed also that in consequence of Arbor street being cut up by the water he could not use it for the

purpose of hauling coal to the rear of his premises; also that the street was rendered impassable even by pedestrians, whereby he lost patronage.

It is urged that the court erred in admitting testimony bearing upon the allegation of loss of patronage supposed by the plaintiff to result from the impassable condition into which Arbor street was put. This is the subject of the sixth assignment. We do not deem it necessary to discuss the abstract question as to a plaintiff's right to recover for loss of patronage in his business, and consequent loss of profits which resulted from the tortious closing of a public roadway upon which his premises abutted, or the question whether the plaintiff's testimony was sufficient to warrant a jury in finding the facts suggested in the foregoing statement of the question of law. For, in the first place, no exception to the admission of the evidence appears upon the record, and in the second place the court clearly and emphatically instructed the jury in the general charge as well as in the answer to the defendant's fourth point that under the evidence the plaintiff could not recover for loss of patronage in consequence of Arbor street being rendered impassable. Therefore the sixth assignment is overruled.

Further on in his charge the learned judge enumerated the elements of damage, that the jury might take into consideration, and amongst other things said: "But the inconvenience of the dampness may possibly have had some effect upon his business. If so it would be an element of damage." It is barely possible that he did not intend this clause of his charge to be interpreted in the way we are about to suggest. If it stood alone there would be more room for this supposition; but taking the instruction in connection with the qualification of the defendant's fourth point we cannot avoid the conclusion that a jury would naturally be led to suppose, that, while they could not allow the plaintiff damages on account of the obstruction of Arbor street, they were at liberty to find that he had sustained loss in his business in consequence of the dampness of his premises, and that if they so found it would be an element which would properly enter into the assessment of damages. The size of their verdict does not warrant us in assuming that the jury did not so suppose, but tends rather to show the contrary. And, if the court did not intend its instructions to be taken in that

way, it seems probable if not absolutely certain that the defendant's fourth point would have been affirmed without qualification. But while the plaintiff attempted to show that he lost patronage in his business by reason of Arbor street being impassable, we fail to find any evidence whatever which tends to show that he lost patronage or sustained any loss in his business by reason of the dampness of his premises. A reading of the testimony quoted in the sixth assignment of error, which, substantially, is all the testimony there is upon the subject of loss of profits or patronage in his business, will show the absolute correctness of our interpretation of it as above stated. Such being the case, we feel constrained to hold, that there was error in submitting to the jury the question whether the plaintiff had sustained loss in his business from the last mentioned cause. As was said by Mr. Justice THOMPSON in McKnight v. Ratcliff, 44 Pa. 156, "it is often much easier to discover when an assumed rule for damages will lead to erroneous results, than to point out in all cases in advance what the true rule should be." This is especially true where the subject of the loss of profits as an element or measure of damages is under consideration. But in any view of the subject this seems to be clear, that, in the exceptional cases where recovery for loss of profits is allowed, the profits must be susceptible of accurate estimation, they must not be speculative, contingent or uncertain, and the loss of such profits must be the proximate result of the wrong. A valuable collection of cases sustaining this general proposition will be found in the notes to Wallace v. Penna. Railroad Co., 52 L. R. A. 33. A fortiori, the plaintiff ought not to have been permitted to recover damages upon the theory that he lost patronage and consequent profits by reason of the dampness of his premises in the absence of evidence to support that theory. The fifth assignment of error is sustained.

We think the court correctly instructed the jury that if the defendant, the Pittsburg, Bessemer and Lake Erie Railroad Company had nothing to do with the original construction (the original construction was by the Pittsburg and Butler Railroad Company), it would not be responsible for any defect before it took possession, but if it took possession and used the railroad with a defective sewer, it would be responsible for it after it took possession. The burden of proof was on the plain-

tiff and it must be conceded that the evidence as to the taking possession by the defendant and as to the time when it took possession is not as clear as it ought to have been.    But while the evidence is very meager we cannot say that there is no evidence that the defendant was responsible for any part of the injury. We remark, however, that the plaintiff evidently assumed that there would be no controversy as to the matters of fact above suggested, and in doing so took too much for granted.

Judgment reversed and venire facias de novo awarded.