## Perkiomen Railroad Company *v.* Kremer, Appellant.

218  641
35 SC 233

218  641
40SC² 16

*Railroads—Right of way—Ejectment—Evidence—Province of court and jury.*

In an action of ejectment by a railroad to recover land alleged to be included within the company's right of way, it appeared that the plaintiff claimed title by a general release executed more than thirty years before by defendant's predecessor in title. The lease did not describe the land by metes and bounds. The plaintiff offered in support of his contention nothing except the deed of release, and the oral testimony of its engineer, who spoke simply as an expert from data obtained from the company's office, and information which he had derived on inquiry of others, supposed from long residence to be familiar with conditions as they had existed. The witness had not assisted in the original location of the road. The authenticity of the data consisting of plans and notes, was not admitted by defendant. *Held,* (1) that it was reversible error to take the case from the jury and direct a verdict for the plaintiff; (2) that the burden was on the plaintiff to establish its title to the land in dispute, and this could only be done by evidence satisfactory and convincing to the jury, and (3) that as the evidence was wholly oral, this of itself necessarily drew the case to the jury.

However clear and indisputable may be the proof, when it depends upon oral testimony, it is nevertheless the province of the jury to decide under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of evidence.

*Estoppel—Declarations—Evidence—Railroads.*

That which parties cannot pass by their direct act, they cannot pass by way of estoppel through their conduct.

In an action of ejectment by a railroad company to establish title to land alleged to be included within the right of way, testimony as to declarations made and directions given by certain subordinate officers of the railroad company, are inadmissible. As none of such parties could have given away, or conveyed any part of the company's property, they cannot by their acts or declarations pass title to it by way of estoppel.

Argued March 19, 1907. Appeal, No. 324, Jan. T., 1906, by defendant, from judgment of C. P. Montgomery Co., March Term, 1905, No. 17, on verdict for plaintiff in case of Perkiomen Railroad Company v. Michael M. Kremer. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and STEWART, JJ. Reversed.

Ejectment for land in the borough of Schwenksville. Before WEAND, J.

The facts are stated in the opinion of the Supreme Court.

The court charged as follows :

Generally, when property is acquired by a railroad company, either by grant or condemnation, the extent of the grant or of the taking under the proceedings in condemnation can be ascertained from the papers on file, either from the deed or from the drafts accompanying the condemnation proceedings. Where that is done, there can be no question as to the location of the road, or, rather, of the property deeded or taken. Now, although a deed may be made to a railroad company for a certain quality of land, and the railroad company, in the location of its land, locates it over such lines, it cannot be said that they have lost their right to the full extent of the grant. By so doing they may be trespassers on another's property; but that fact does not take away their title to the land actually claimed then or taken by them under proceedings in condemnation and paid for under such proceedings. Where the extent of the grant is uncertain and cannot be definitely ascertained, either from the deed or from the proceedings in condemnation, or from the neces-

sary papers fixing the location and construction of the road, evidence can be introduced to show what the railroad has done as defining the extent of their grant.

In this case, the first duty of the railroad company was to show title to this property in dispute. They produce a deed of release, which calls for thirty-five feet of ground on the west side of the railroad. There have been produced here drafts, field notes, and another data in the possession of the railroad company, according to which this railroad was constructed.

It was said, in Philadelphia & Reading Railroad Co. v. Obert: " To establish the true location of a railroad in Pennsylvania, is a matter peculiarly within the power of the railroad company. There is not, and never has been, any requirement that the location should be anywhere filed or recorded for the benefit of parties interested. The papers indicating the lines are the property of the company, and are ordinarily inaccessible to persons having no connection with the company." Therefore, these original records are evidence, and strong evidence, as to what the railroad company did in this particular case. The engineer, who was examined upon the stand, testifies that he examined these documents, in the possession of the railroad company, which show the original surveys and location; that the description therein contained of this particular property accords, in every particular, with the description and with the draft accompanying the deed of release; and he further says: " Q. Are there any metes or bounds contained upon that draft, any more than there are upon the draft attached to the release in question ? A. They are the same. Q. Then there are no metes and bounds? A. There are. Q. There are metes and bounds ? A. The curvature is given, the width is given, the beginning and ending points were given." And then he declares that, from his measurements made recently, he has located this railroad property with such accuracy as that it brings the disputed point within the deed of release and as being part of the thirty-five feet that time mentioned as being on the west side of the railroad company. This evidence, of course, if believed, would establish that this defendant unfortunately is on the railroad property; and, in order that the jury could find

against this evidence, there ought to be something which would warrant such a finding.

The only evidence introduced that would contradict the testimony of the railroad engineer is that of Mr. Miller, a surveyor, and there is nothing in his testimony, in the opinion of the court, which contradicts the testimony of the railroad engineer. Mr. Miller admits that he knows nothing of the original location of the road. He did not have access to these original documents, and he is not prepared to say that the evidence of the railroad engineer is not correct. Therefore, in the opinion of the court, the jury would not be justified in rejecting this testimony as to where this property was located, as defined and mentioned in the deed of release. Now, if that is the case, then what is there to show that this defendant has any rights to this property?

It is said, in the first place, that the railroad company, instead of taking forty-five feet on the east side of the road, have taken more than that, and, with what they have taken there, some fifty-five feet, added to twenty-five feet on the west side, would give them their full eighty feet, and would give Mr. Kremer the ground that he claims. I cannot admit that such is the fact. The ground on the east side of the road is not inclosed by any fences, nor is there any evidence that the railroad company has ever assumed any ownership over it, even to the extent of their forty-five feet; and if, therefore, they have committed an illegal act, yet even if they have done so, it would not divest them of their right to the thirty-five feet on the west side. It is further said that, inasmuch as this deed of release required the owners of the property on the west side to maintain fences, the erection of the buildings on that line is equivalent to the erection of fences and establishes the line. I do not understand that to be the law. There is not a particle of evidence in this case that the railroad company ever consented to the erection of those buildings, nor that any person connected with the railroad company had any authority to define the limits of the railroad company, by which either Mr. Kremer or Mr. Bergy, or their predecessors, would have the right to say that that was the line. It may have been that the employees of the railroad company were mistaken, and that they actually thought that

twenty-five feet would be all that the railroad company was entitled to; but because they may have thought so, or may have led Mr. Kremer, or Mr. Bergy, or any one at that time owner, to have believed that such was the fact, that cannot affect the railroad company. It cannot be that the employees of a railroad company can give away the property of the railroad company in that way.

It is further said that Mr. Kremer and his predecessors have used this property for such length of time, as that, by adverse user, they have acquired title thereto. I cannot assent to this proposition. It is said that there is no Pennsylvania case on this subject. In Philadelphia & Reading Railroad Co. v. Obert, 109 Pa. 193, it is assumed that such cannot be the fact. It is said there : " Assuming that a railroad is, in a qualified sense, a public highway, held under the commonwealth's right of eminent domain, under the charter, and that title to the lands covered by the location as against the company could not be acquired by adverse possession," and so forth. That same expression was used in Bassett v. Penna. R. R. Co., 201 Pa. 226, where again this same question was raised : " Assuming that a railroad is, in a qualified sense, a public highway, held under the commonwealth's right of eminent domain under the charter, and that title to the lands covered by the location as against the company could not be acquired by adverse possession," and so forth. And so in Zahn v. Ry. Co., 184 Pa. 66, this same expression of opinion occurs ; and, therefore, whilst the authorities are numerous in other states that it can be acquired, the trend of authority in Pennsylvania is against such a doctrine. Railroads are regarded as public highways, the same as turnpike companies and the same as our ordinary roads, and the law does not allow their rights to be interfered with in the manner claimed by this defendant.

[I, therefore, am of the opinion that this is purely a question of law, that there is no evidence here which would warrant its submission to the jury, and that, no matter what injury this may inflict upon this defendant, I am bound to instruct the jury as I view the law, and that is, that, under all the evidence in this case, their verdict must be for the plaintiff.] [9]

[I, therefore, direct that all evidence on the part of employees of the railroad company, tending to show consent by the railroad company of the building of the buildings on this line, or of the fixing of the line, be stricken out.] [10]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* among others were (9, 10) above instructions, quoting them.

*N. H. Larzelere,* for appellant.—The case was for the jury: Phila. & Reading R. R. Co. v. Obert, 109 Pa. 193; West Chester & Phila. R. R. Co.'s App., 13 Atl. Repr. 214; Zahn v. Ry. Co., 184 Pa. 66.

If there was silence with knowledge, and both must be conceded, estoppel obtains. If actual participation in fixing the building lines took place, then there was encouragement which renders the doctrine applicable. In either case the company is estopped: Chapman v. Chapman, 59 Pa. 214; Wahl v. Pitts. & West. Ry. Co., 158 Pa. 257; Redmond v. Excelsior Saving Fund, etc., Assn., 194 Pa. 643; Logan v. Gardner, 136 Pa. 588.

*Montgomery Evans,* with him *John M. Dettra,* for appellee.

Opinion by Mr. Justice Stewart, June 25, 1907:

The one question in the case was, whether the strip of land in dispute was included in the right of way which defendant's predecessor in title had conveyed to the plaintiff. The deed of release, executed and delivered in 1869, contained only a general description of the premises, and the exact boundaries can now only be determined as the center line of the railroad as then constructed can be ascertained. If located as contended for by the plaintiff, then the disputed ground was embraced in the release, and the right to the same is now in the plaintiff. The plaintiff offered in support of its contention nothing except the deed of release, and the testimony of its engineer, who testified simply as an expert from data obtained in the office of the plaintiff's company in Philadelphia, and the information which he derived upon inquiry of others supposed from long residence to be familiar with conditions as they had

existed.   The draft which he exhibited he had prepared from the data obtained from the office of the railroad company; the information he gained upon inquiry he applied only by way of corroboration of the results reached from the former. These data consisted of what was claimed to be the original right of way plan of the company, and field notes in connection therewith, together with a stationing plan.   Notwithstanding the fact that the company's track had been more or less shifted, it was contended by the plaintiff, and the contention was supported by the witness, that the original center line contemplated in the deed of release could, with help derived from these plans and notes, be definitively and accurately determined.   The witness had not himself assisted in the original location of the road, having been in the plaintiff's employ only during the last four or five years.   The authenticity of the plans and notes was not admitted by the defendant, but the witness was allowed to state his conclusions therefrom.   His testimony was persuasive to the mind of the court ; and in the general charge it is thus referred to : " This evidence, of course, if believed, would establish that this defendant unfortunately is on the railroad property ; and in order that the jury could find against this evidence, there ought to be something which would warrant such a finding." A verdict for the plaintiff was directed.

The case calls for no expression from us as to the strength of defendant's case.   He and those under whom he claimed, had been in the exclusive occupancy of the disputed strip since 1869, when the deed and release were executed.   Permanent structures had been built on the premises, the defendant at the time of suit maintaining thereon a large brick bakery which he had erected in 1898.   If the plaintiff was entitled to recover it was because its own title had been established.   Whether it had been established depended entirely upon the sufficiency and accuracy of the data employed by the witness, the engineer, Lanning, in determining where the center line of the company's track was at the time of the making of the release, and the accuracy of the result he reached.   It is not for us to question either ; no more was it for the learned judge of the court below to determine their conclusiveness; that could only be done by the jury.   It was

not a question whether the defendant had offered anything against the testimony of this witness.  The learned judge did not exceed the limits of judicial privilege when he instructed the jury in his general charge, that in order to find contrary to this evidence there ought to be something which would warrant such finding; but in directing the jury to find a verdict for the plaintiff in accordance with this evidence, and upon it alone, he was exercising a function that belonged exclusively to the jury.  The burden was on the plaintiff to establish its title to the land in dispute, and this could only be done by evidence satisfactory and convincing to the jury. Whether it was satisfactory and convincing to them, they only could say.  The evidence was wholly oral, and this of itself necessarily drew the case to the jury.  " However clear and indisputable may be the proof, when it depends upon oral testimony, it is nevertheless the province of the jury to decide under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if they should deem the verdict contrary to the weight of evidence : " Reel v. Elder, 62 Pa. 308.  The assignment of error which relates to this action of the court must be sustained.

It is only necessary to say with respect to the remaining assignments, that the doctrine of estoppel is without application here.  No error was therefore committed in striking from the record the testimony as to the declarations made and directions given by certain of the officers—in this case subordinates—of the railroad company with respect to the extent of the right of way and the occupancy of the disputed ground. None of these parties could have given away or conveyed any part of the company's property ; and what could not pass by their direct act, could not pass by way of estoppel through their conduct: Pennsylvania Railroad Company's Appeal, 80 Pa. 265.

We see no error in the record except as above indicated ; but for this the case must go back.

Judgment reversed and venire facias de novo awarded.