## Foehr *v.* New York Short Line Railroad Company, Appellant.

*Negligence—Trespass—Obstruction of private road—Bridge—Railroad —Evidence—Question for jury.*

1. In an action of trespass against a railroad company to recover for the obstruction of a private road by the alleged construction thereon of a permanent pier of a railroad bridge, the case is for the jury where the testimony of the plaintiff, although somewhat uncertain, was in effect that such a pier encroached on his right of way, and this testimony is corroborated by another witness who testified more clearly to the same fact. In such a case a verdict and judgment for the plaintiff will be sustained although the appellate court may deem that the evidence adduced by the defendant was more satisfactory and convincing than that adduced by the plaintiff.

*Practice, C. P.—Trial—Pleading—Review—Negligence—Obstruction of private road.*

2. After a trial judge has submitted a question to a jury from the standpoint from which both parties to the issue manifestly have tried it, the one against whom the verdict is rendered should not ordinarily be permitted on appeal to question the correctness of the submission, except in cases where manifest injustice results from it.

3. Where a case is tried by both parties on the theory that a particular fact is a material and relevant fact, although not mentioned in the statement of claim, the appellate court will not reverse a judgment on a verdict in favor of one of the parties, because the trial judge submitted to the jury the evidence as to such fact.

4. Where a landowner claims in an action of trespass against a railroad company damages for injuries to a private road, and at the trial introduces evidence not only as to temporary obstruction of the road during the construction of a bridge, but also evidence to the effect that a pier of the bridge was built upon a portion of the right of way, evidence as to the construction of the pier is a relevant fact, although not mentioned in the statement of claim, because it materially aids the jury in determining the proximity and extent of the encroachment upon and obstruction of the road by the other branches of the work incidental to the construction of the bridge, including the excavation for the pier, the erection of the false work and the like.

*Negligence—Obstruction of private road—Independent contractor—Trespass—Evidence.*

5. Where an act which causes an injury is one which the contractor was employed to do, and the injury results not from the manner of doing the work, but from the doing of it at all, the employer is liable for the acts of his independent contractor.

6. Where a railroad company lets out a contract for the construction of a bridge, but reserves to itself the right to supervise the construction by its chief engineer, who is given authority to direct the work as it progresses, to make any alterations, and to demand that the contractor's employees should be discharged under certain circumstances, and the work is actually carried out under the chief engineer's direction, the railroad company is responsible for any temporary or permanent obstruction of a private way resulting from the chief engineer's direction, and necessarily involved in the construction of the bridge.

7. In such a case the declarations of the contractor as to the removal of the obstructions and the admissions of the plaintiff's tenant are inadmissible in evidence.

*Negligence—Obstruction of highway—Damages.*

8. In an action by a landowner against a railroad company for an obstruction of a private road, and the consequent inability of the plaintiff

to market more than one-half of his crops, if the defendant offers evidence that the plaintiff had access to the public highway by another road, and this is denied by the plaintiff, the question of fact arising from such evidence is for the jury.

9. In such a case the plaintiff testified that he had but two market days a week for his vegetables which were chiefly perishable; that owing to the distance he could make but one trip on each of these days; and that owing to the narrowing of his roadway by the obstruction, he was unable to use his large wagon and two horses to haul his vegetables to market. He admitted, however, that he could and did use a small wagon drawn by one horse and never was prevented from getting out with his load. There was no evidence that he tried to hire an additional small wagon, or that he had not the means to do so, or that he made any effort to sell the crops he could not haul to another who could haul them. *Held*, that the evidence was not sufficient to sustain a finding by the jury, that he could not have marketed his entire crops by the exercise of reasonable diligence, and that therefore evidence of the value of the crops that went to waste was not admissible.

10. Where a recovery is allowed for the loss of anticipated profits as an element or measure of damages, such profits must be susceptible of accurate estimation; they must not be speculative, contingent or uncertain, and the loss of such profits must be the proximate result of the wrong.

11. It is incumbent in every case upon an injured party to do whatever he reasonably can to lessen the injury. He cannot stand idly by and permit the loss to increase, and then hold the wrongdoer liable for the loss which he might have prevented by reasonable exertion and reasonable expense.

Argued Oct. 14, 1908. Appeal, No. 1, Oct. T., 1908, by defendant, from judgment of C. P. No. 1, Phila. Co., March T., 1906, No. 931, on verdict for plaintiff in case of William Foehr v. New York Short Line Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for injuries alleged to have been sustained by the obstruction of a private road by reason of the building of a railroad bridge. Before KINSEY, J.

At the trial when plaintiff was on the stand he was asked this question:

"Q. How much of your produce were you able to get out in that summer compared with the total bulk?"

Mr. Lamb: I object on the ground that although he has

shown that he could not get out with a heavy wagon he has also shown that he could get out with the light wagon.

Defendant's objection overruled. Exception for defendant. [1]

Mr. Hepburn: "Q. How much of your produce were you able to get out in that summer compared with the total bulk? A. Why, I could only get out about half, sometimes not that, because I could not get through with my big truck wagon to haul my loads that I wanted to haul to the city. Q. Now, what was the produce you could not get out? A. That was hay. Q. How much of that were you unable to get out, how much hay? A. Well, I had about twenty or twenty-one ton; that is, I count on the sand being so deep and I had to have leaders every time to pull the guts out to get out, and I just stopped hauling because it did not pay me to haul it out, and I got away with about twelve ton, and seven or eight ton I had to leave there. Q. What became of that seven or eight tons? A. Well, some of it molded and the roof was bad and it got bad and I lost some of it. Q. How much did you lose? A. Well, about four ton. Q. About four tons? A. Yes, sir. Q. And its value was how much a ton?"

Objected to by counsel for defendant.

Mr. Lamb: To save my continual objections, I think if your honor will allow me—you see the evident purpose is to show how many crops he was unable to get out and what he would have obtained for these crops, so if your honor will allow me to enter a general objection to this line of questioning it will save my objections.

The Court: Enter a general objection by counsel for the defendant to this line of questioning. Also his objection overruled and exception for the defendant. [2]

Mr. Lamb: If the court please, I move to strike out the testimony of Mr. Foehr so far as it relates to the quantity of crops that he lost and the prices that he would have obtained for them had he sold them, on the ground that that is not the measure of damages, and that it has been shown by his own testimony that he could have gotten out through that railroad with a lighter wagon.

The Court: Just make your reason a little clearer, will you, counsel?

Mr. Lamb: I said that the measure of damage in a case of this kind, supposing that his road had been obstructed, would have been the cost of removing such an obstruction or if he could have used it in another way as he stated before with a lighter wagon, would have been the expense of hiring another wagon so that he could have used two and carried the same quantity of truck to market that he said he was deprived of, because he could not carry it in a particular kind of wagon. The rule of law is, that a man must minimize his damage. He must do that. He can minimize his damages and he cannot sit down and recover here for one-half of the crop which he said himself he could not use, because he could not get through with the market wagon, but he did get through there with an ordinary wagon, and so, I say, it is an improper measure of damages when he is allowed to put in evidence not the extra expense to which he was put to, but the loss of crops which he did not take to market.

The Court: In cross-examination, he replied to your questions that he could only take—or at least it was his cross-examination in chief, first he could only get half of his crops out by reason of the size of the wagon that he was obliged to use on account of obstructions in the roadway. In cross-examination upon that statement he said to you when you asked him why, then, he did not engage another wagon of the same size, so as to take the other half, he was prevented from taking out, he said he was unable to get such a wagon, and you asked him why he did not hire, as I recollect the testimony, another wagon, and he said he could not hire "none." That is the way he put it as I remember that, "none." Now, isn't that a question for this jury to pass on, whether he was derelict in his effort to reduce these damages. Of course, as a principle of law, and I will so say to the jury, he was bound to do all that was possible to avoid and lessen these damages, everything in reason. There is no question about that. That is a very simple principle of law in this case of which there can be no question. The question will come whether or not he

could have done something to have saved the crop that was rotting in the ground. I shall permit the whole case on the evidence to go to the jury. I refuse your motion to strike out. Exception for defendant. [3]

Defendant presented these points:

1. The evidence in this case shows that the plaintiff was granted by deed the use of a roadway as then laid out about fifty feet in width leading from his land to the Krewstown road. That where the bridge was erected over the defendant's railroad, the roadway was along the northerly side of the Pennypack creek, the only visible indication of a roadway at that point being a wagon road of about ten or twelve feet in width; the southerly side of this wagon road being about five or six feet from an old stone wall along the creek. The said roadway being of varying widths at other points. Where there are material and visible boundaries of the roadway on the ground they will control in such a grant as this over the width in feet mentioned in the deed. *Answer:* Portions of this point I would affirm, but as it is drawn here it involves too many questions of fact which belong exclusively to you for judgment, and as a whole I refuse it. [4]

5. There is no evidence in this case from which the jury can find that any part of the permanent structure of the pier is built upon the traveled roadway, the use of which was granted to the defendant. *Answer:* Refused; that is a fact, for you, gentlemen. [5]

7. The evidence in this case shows that the bridge over the road in question was constructed for the defendant partly by the Smith Construction Company and partly by H. S. Kerbaugh, Incorporated, under certain contracts, and the specifications therein set out, under the supervision of the engineers of the defendant company; the said contracts providing that the contractors should be responsible for any damages that might be done by them during the performance of the work to the property adjacent thereto in consequence of their unskillfulness or negligence, and that whenever any public or private roads should be interfered with the contractor should keep a temporary road, during such interference, at all times

unobstructed and safe for travel. Under the terms of these contracts the defendant company is not responsible for any wrongful acts of the contractors, or for any obstruction of plaintiff's roadway by them during the construction of the said bridge caused by the manner in which they did the said work. *Answer:* That I refuse. The chief engineer of the defendant company was there supervising the whole of this work. [6]

8. Because of the contracts offered in evidence the defendants are not responsible for the acts of the contractors in depositing dirt, stones, or material in the right of way claimed by the plaintiff, or for allowing engines or machinery to remain thereon. *Answer:* Refused. [7]

9. Even if the jury should find that there has been at times unreasonable obstructions of the plaintiff's roadway for which the defendants are responsible, he can only recover nominal damages therefor; unless he shows an actual loss resulting to him by reason of these obstructions; and then only to the amount of such actual loss shown by the evidence. This is not a case for the imposition of exemplary or vindictive damages. *Answer:* Refused. [8]

13. Under all the evidence in this cause your verdict should be for the defendant. *Answer:* The last point I decline to read and refuse. [9]

Verdict and judgment for plaintiff for $1,100. Defendant appealed.

*Errors assigned* were (1–3, 10) rulings on evidence, quoting the bill of exceptions; (4–9) above instructions, quoting them, and (11) in overruling defendant's motion for judgment non obstante veredicto.

*John G. Lamb,* for appellant.—Under this evidence it was clearly error to leave to the jury the question whether any portion of the pier was upon the traveled roadway. That it might have been within the fifty feet mentioned in the grant was not material: Stevenson v. Stewart, 7 Phila. 293.

As the space left for the use of the appellee for the passage

of wagons while the false work and temporary trestle were there, was twenty-five feet wide, and twenty feet high for sixteen feet in the center, and twelve feet high at the sides, it is idle to contend that a wagon could not get through. The appellee himself states that six or seven feet is sufficient on a straight road.

It is only for an unreasonable interference in these respects that a claimant can recover. The use of the roadway for free and unobstructed passage was the same use that the public is entitled to on its highways.

It is submitted that even assuming a right to recover, the court below was clearly wrong as to the measure of damages.

For an injurious trespass, the measure of damages is the cost of remedying the injury, unless that equals or exceeds the value of the thing injured, when such value becomes the measure: Lentz v. Carnegie Bros. & Co., 145 Pa. 612; Robb v. Carnegie Bros. & Co., 145 Pa. 324; Mellick v. R. R. Co., 203 Pa. 457; Irwin v. Nolde, 164 Pa. 205; Taylor v. Canton Twp., 30 Pa. Superior Ct. 305.

Moreover, it was the duty of the appellee to do what he could to minimize his damages.

*Fred Taylor Pusey*, with him *C. J. Hepburn* and *Wendell P. Bowman*, for appellee.—Defendant was a trespasser: Keil v. Gas Co., 131 Pa. 466; Railroad Co. v. Cooper, 105 Pa. 239; Gilmore v. Pittsburg, etc., R. R. Co., 104 Pa. 275; Justice v. Railroad Co., 87 Pa. 28; Dimmick v. Brodhead, 75 Pa. 464; Union Pet. Co. v. Bliven Pet. Co., 72 Pa. 173; Hall v. McCaughey, 51 Pa. 43; Williams v. Esling, 4 Pa. 486.

Defendant could not escape liability by contract: McCloskey v. Powell, 138 Pa. 383; Reynolds v. Braithwaite, 131 Pa. 416.

A person or corporation on whom positive duties are imposed by law, cannot avoid liability for injury resulting from failure to perform such duties, by employing a contractor for the purpose; nor, in such a case, is the fact that the injuries resulted from the contractor's negligence a defense: Wallace v. New Castle & Shenango R. R. Co., 11 Pa. C. C. Rep. 347; Minnick v. Ry. Co., 203 Pa. 632; McNamee v. Hunt, 87 Fed.

Repr. 298; Gray v. Pullen, 5 Best & Smith, 970; Robbins v. Chicago, 71 U. S. 657.

The defendant is liable for the acts of the contractor incidental to his contract. The work was not done by independent contractors. The defendant both reserved in its contracts, and also actually exercised the right to control and direct the work, not only as to its results, but as to the manner of performing it as well. The evidence submitted supports this contention: Sadler v. Henlock, 4 Ellis & Blackburn, 570; Congregation v. Smith, 163 Pa. 561.

So-called "profits" are a proper measure of damage: St. John v. N. Y., 6 Duer, 315; Park v. Ry. Co., 43 Iowa, 636; Francis v. Schoellkopf, 53 N. Y. 152; Stetson v. Faxon, 36 Mass. 147; R. R. Co. v. Capps, 67 Ill. 607; Terre Haute v. Hudnut, 112 Ind. 542; Chandler v. Allison, 10 Mich. 460; La Cour v. N. Y., 3 Duer, 406; Chapman v. Kirby, 49 Ill. 211; U. S. v. Behan, 110 U. S. 338; French v. Lumber Co., 145 Mass. 261.

It was proper to admit all evidence showing the circumstances as a basis for estimating the damage: Simmons v. Brown, 5 R. I. 299; White v. Morseley, 25 Mass. 356; Bucknam v. Nash, 12 Me. 474; St. John v. Mayor, 6 Duer, 315; Park v. R. R. Co., 43 Iowa, 636; Shafer v. Wilson, 44 Md. 268; Stetson v. Faxon, 36 Mass. 147; R. R. Co. v. Capps, 67 Ill. 607.

OPINION BY RICE, P. J., July 14, 1909:

The plaintiff's right of way, which he claims was the only available way he had for hauling the products of his farm to the public highway and thence to market, was derived by grant from Clara Murray of "the free use and privilege of a roadway as now laid out about fifty feet wide between and from the farm land of said William Foehr," beginning at the plaintiff's land at a point on the north side of Pennypack creek, "thence up the said creek the several courses on the brink thereof" to a certain mill race and thence "up the several courses thereof" to the public highway known as the Krewstown road. This private road had been used by the owners and occupiers of the plaintiff's farm for a number of years prior to his purchase. Several years after he became owner of the farm and received the grant

above referred to, the defendant company acquired title to the Murray farm over which the private road was laid, and constructed a railroad and a bridge therefor which crossed Pennypack creek and the private road. The plaintiff brought this action to recover damages for alleged obstructions of his right of way, and on the trial claimed that part of the permanent pier encroaches thereon; that part of the temporary trestle and other temporary structures were erected and maintained thereon and materially obstructed it; and that it was further obstructed by the temporary deposit thereon of sand, lumber, stone and other materials used in the construction of the bridge.

We cannot agree with the defendant's counsel in his contention that there was no evidence that any part of the permanent pier of the railroad bridge was built upon the traveled roadway, the use of which was granted to the plaintiff. Throughout his testimony the plaintiff persisted in his claim that the pier encroaches somewhat upon his right of way. It is true, some expressions in his testimony upon that subject, taken by themselves, tend to show that this claim was based on his erroneous supposition that irrespective of the width to which the roadway was actually laid out, as indicated by the travel and other marks on the ground, his grant gave him a right of way over the entire strip of ground fifty feet wide along the brink of the creek, yet the court would scarcely have been warranted in charging the jury that his testimony taken as a whole would not support a finding that the pier encroaches upon the roadway as actually laid out and existing at the time of the grant to him. Furthermore, that allegation of fact does not rest on his unsatisfactory testimony alone. Another witness testified more clearly that it encroaches on the traveled roadway about five or six feet, as near as he could judge. The question was one of fact, and although the evidence adduced by the defendant seems to us more satisfactory and convincing than that adduced by the plaintiff, it was the province of the jury to decide it under instructions from the court as to the law applicable to the facts, and subject to the salutary power of the court to award a new trial if it should deem the verdict contrary to the weight of the evidence: Reel v. Elder, 62 Pa. 308; Perkiomen R. R. Co. v.

Kremer, 218 Pa. 641. The fourth and fifth assignments of error are overruled.

The objection that the fact above considered was not relevant under the pleadings, because no mention is made in the statement of claim of the encroachment of the pier, was not raised in the court below, so far as the record shows, and is not distinctly raised here by any assignment of error. Moreover, a perusal of the defendant's points and the report of the trial shows very clearly, we think, that the case was tried on the theory that it was a material and relevant fact. The defendant not only did not object to the evidence upon the subject adduced by the plaintiff, but on its own part introduced much evidence upon the same subject. Its counsel did not specifically request instructions to the jury that there could be no recovery on the ground of the encroachment of the pier, if the jury should find that fact, but did request the court to charge that if the jury found that fact, the plaintiff could only recover for the actual loss shown by him to have been caused by the encroachment from the time it was placed there to the date of bringing suit. The learned judge affirmed the point, and could not have gone further without being more zealous than counsel. He might well have inferred that the defendant deemed the statement of claim broad enough to sustain recovery for encroachment of the pier, or did not desire to raise the technical objection that it was not. After a trial judge has submitted a question to a jury from the standpoint from which both parties to the issue manifestly have tried it, the one against whom the verdict is rendered should not ordinarily be permitted on appeal to question the correctness of the submission, except in cases where manifest injustice results from it: Carpenter v. Lancaster, 212 Pa. 581. See also Hartley v. Decker, 89 Pa. 470; Taylor v. Sattler, 6 Pa. Superior Ct. 229.

But apart from the question of the sufficiency of the declaration to sustain a recovery of nominal or actual damage the encroachment of the pier may have caused, the plaintiff's counsel are right in saying that it was a relevant fact, because it would materially aid the jury in determining the proximity and extent of the encroachment upon and obstruction of the road by

the other branches of the work incidental to the construction of the bridge, including the excavation for the pier, the erection of the false work and the like.

The next question to be considered is as to the applicability of the rule relative to the immunity of an employer from responsibility for the acts of his independent contractor. The bridge was constructed for the defendant by certain construction companies under written contracts, and the court was requested to charge that under the terms of these contracts the defendant was not responsible for any obstruction of plaintiff's highway by the contractors during the construction of the bridge, caused by the manner in which they did the work, or, as expressed in another point, for the acts of the contractors in depositing dirt, stone or materials in the right of way claimed by the plaintiff, or for allowing engines or machinery to remain thereon. The refusal of these points is the subject of the sixth and seventh assignments of error. Wherever the contract prescribes the manner in which the work is to be done, or wherever the building or other structure contracted for cannot be erected at the place designated without actionable injury to the property of third persons, the other party to the contract is responsible for the acts of the contractor, thus injurious to others, which compliance with the provisions of the contract renders necessary. The general proposition, which scarcely needs the citation of decisions for its support, has been thus stated: "Where the act which causes the injury is one which the contractor was employed to do and the injury results, not from the manner of doing the work but from the doing of it at all, the employer is liable for the acts of his independent contractor:" 26 Cyc. of Law & Proc. 1557. The subject is elaborately treated in the notes to Thomas v. Harrington, 72 N. H. 45; s. c., 65 L. R. A. 742. Having regard to sound principle, the same rule must be held to apply where the injury results from the doing of the work in the manner expressed in the contract, or directed by the employer or by one acting for him who has authority under the contract to direct it. In First Presbyterian Congregation v. Smith, 163 Pa. 561, Mr. Justice DEAN said: "All the authorities cited by appellants, determining the lia-

bility of an independent contractor, are to the effect that if the power to direct is only as to the results of the work, without any control over the manner of performing it, the liability of the contractor remains. But this contract reserved far larger powers than mere direction as to results; as to many items of the specifications, the right to direct the manner in which the work should be done was retained. In very few of the many specifications, was the method of carrying them out left to the skill and judgment of the contractors. Even the right to discharge incompetent workmen was reserved to the city engineer." As will be seen later, this description of the nature and extent of the right to control the doing of the work might well have been written for the present case. In the recent case of Sipe v. Penna. R. R. Co., 222 Pa. 400, it was held that in an action against a railroad company to recover damages for the alleged negligent deposit of debris in plaintiff's dam, resulting from the construction of bridges in the stream above the dam, the defendant cannot claim immunity on the ground that the construction of the bridges had been done by an independent contractor, where it appears that the company had accepted the work of the contractor with full knowledge of the condition in which he had left the bed and banks of the stream. While the decision was put upon the ground thus stated, there is the following significant language in the opinion of Mr. Justice POTTER relative to the effect of the control retained by the defendant upon the question of its responsibility for the negligence of the contractor: "The negligence consisted in placing the loose material in or near the stream where it would in the natural course of events be washed down by the ordinary flow of the water, aggravated no doubt by floods or high water. In the present instance the work was entered upon and prosecuted by the defendant company under the right of eminent domain, and its agreement with the contractor retained the right of supervision in its own engineer, with power to annul and forfeit the contract at his discretion if the work was not being done to his satisfaction under the plans and specifications of the defendant company. If it were necessary to rest the case upon that point, we would be inclined to hold that the control retained by the defendant

company over the manner of performing the work was so close and complete as to render it responsible." Reynolds v. Braithwaite, 131 Pa. 416, is also a pertinent case. And Washington Natural Gas Co. v. Wilkinson, 1 Sadl. 263; Allen v. Willard, 57 Pa. 374 at p. 381, and Stork v. Philadelphia, 199 Pa. 462, may be appropriately cited. The control retained by the defendant in the contract involved in the present case was very extensive, but before reviewing its provisions in that regard it is worthy of note that owing to its ownership of the land where the alleged injurious acts were committed the defendant had absolute control of it when the contract was made, subject to the plaintiff's right of way. The contract provided, inter alia, that the right of way and use of such lands as were necessary to enable the contractor to conform to the requirements of the specifications should be furnished for the construction of the railway by the defendant; that the work should be executed under the direction of the defendant's chief engineer who should designate the portion of the line upon which work should be begun and performed, and should, at all proper times, furnish plans, measurements, stakes and "directions for doing the work;" that the contractor should discharge any foreman or employee who should, in the judgment of the engineer, be unfaithful, unskillful or remiss in the performance of his work; that the chief engineer should have the right to make any alterations that should be determined upon by him as necessary or desirable in the location, line, grade, plan, form or dimensions of the work; that the trestle work, which included all wooden structures, commonly used as substitutes for abutments and piers and for farm passes, etc., should be built according to the plans furnished and directions given by him; that the defendant could suspend or terminate the work for reasons not specified in the contract, without liability to the contractor for consequential damages, or anticipated damages, or damages of any kind resulting from such suspension or termination; that all questions, differences or controversies which should arise between the parties, in any way whatever pertaining to or connected with the work, should be referred to the chief engineer, and his decision should be final and conclusive; that whenever any work

embraced in the contract should in any manner interfere with a public or private traveled road, the contractor should keep a temporary roadway, during such interference, at all times unobstructed and safe for travel, and any damages which should result from failure so to do might be settled by the chief engineer and held until paid by the contractor. We do not say that the reservation to the employer of the right to discharge the contractor at any time, or of the right to demand the discharge of the contractor's servants under certain circumstances, will of itself prevent the creation of the relationship of independent contractor; it is, however, an important fact to be considered in connection with others in determining that question, as the above quotations from Pennsylvania cases clearly show. But apart from the reservation to the defendant of these rights, the other provisions to which we have referred reserved to the defendant far larger powers than mere direction as to results; in very many particulars the right to direct the manner in which the work should be done was retained. Not only so, but the evidence adduced by the plaintiff shows that the defendant's chief engineer was present almost daily giving directions as to the manner of performing the work, and particularly as to the location of the temporary trestle and false work, the excavating, and even in some instances the deposit of materials. His own testimony bears this out. In short, the defendant not only retained the right to control the work in many of its details, but actually exercised control in some, if not all, of the matters from which the injuries complained of arose. It is not necessary in this case to decide the question whether under such a contract as this the principal would be responsible for every trespass or negligent act of the contractor, but certainly for such injurious acts complained of in this case as were performed pursuant to the chief engineer's direction, and for such unreasonable occupation and obstruction of the plaintiff's right of way, temporary or permanent, as were necessarily involved in the performance of the contract, the defendant was responsible. It follows that the instructions requested by the defendant in its seventh and eighth points were too broad. The sixth and seventh assignments of error are overruled.

From what has been said it follows also, that the ninth and thirteenth assignments, in which complaint is made of the refusal of the defendant's point for binding instructions and motion for judgment non obstante, must be overruled. The eighth assignment is dismissed for the reason that it mistakenly alleges the refusal of the defendant's ninth point, whereas the record shows that the point as modified by its counsel was affirmed.

The admission in evidence of the letter of November 17, 1904, would not have helped the defendant's case except by bringing before the jury the hearsay declaration of the contractor as to the removal of the obstructions and as to the admission of the plaintiff's tenant, and clearly the defendant was not entitled to have this brought into the case. The tenth assignment is overruled.

The remaining assignments to be considered are the first, second and third. They relate, principally, to the admission of and refusal to strike out evidence offered by the plaintiff to show the pecuniary loss he suffered in consequence of his roadway being so obstructed that he could not get more than one-half of certain crops, principally perishable vegetables, to market, and was compelled to permit them to go to waste. One of the objections urged against the admission of this evidence is that he had access to the highway by another road. But this allegation was disputed by the plaintiff and the question of fact arising upon the evidence was properly submitted to the jury. The other objection is that the evidence would not sustain a finding by the jury that he could not have marketed his entire crops by the exercise of reasonable diligence and therefore evidence of the value of the crops that went to waste was not admissible. We are of opinion that this objection is well taken. In any view of the general subject of the loss of anticipated profits as an element or measure of damages, this seems to be clear, that in the exceptional cases where recovery therefor is allowed, the profits must be susceptible of accurate estimation, they must not be speculative, contingent or uncertain and the loss of such profits must be the proximate result of the wrong: Coyle v. Pittsburg, Bessemer, etc., R. R. Co., 18 Pa. Superior Ct. 235.

See also McNeil & Bros. Co. v. Crucible Steel Co., 207 Pa. 493.
Another principle to be kept in view is, that it is incumbent in
every case upon an injured party to do whatever he reasonably
can to lessen the injury: Chamberlin v. Morgan, 68 Pa. 168; Tay-
lor v. Canton Twp., 30 Pa. Superior Ct. 305. He cannot stand
idly by and permit the loss to increase, and then hold the wrong-
doer liable for the loss which he might have prevented by rea-
sonable exertion, and reasonable expense: 13 Cyc. of Law &
Proc. 71. The plaintiff claims that he had but two market
days a week; that owing to the distance he could make but one
trip on each of these days; and that owing to the narrowing of
his roadway at a sharp curve therein by the temporary trestle
he was unable to use his large wagon and two horses to haul his
vegetables to market. He says: "And by taking a double team,
even two horses with a big wagon I could not make the turn
without I would strike the other side of the trestle and get
stuck, or my horses would get scared and back into the creek
and get killed." He admits, however, that he could and did use
a small wagon drawn by one horse and never was prevented
from getting out with his load. But he claims that thereby he
could haul only about half as large a load as he could if it had
been possible to use his large wagon, and as a consequence fully
one-half of his crop of vegetables went to waste. If there were
nothing further in the case, the obvious answer to this claim
would be that if he had used two small wagons he could have
marketed his entire crops. The only reason assigned for urging
that it is not a complete answer is based on this extract from
his testimony: "Q. If you had taken two light wagons you
could have gone there? A. I had no two. Q. If you had
hired another wagon you could have gone there with all the
stuff by making two trips? A. I could not hire none." There
was no evidence that he tried to hire one, or that he had not the
means to do so, or that he made any effort to sell the crops he
could not haul to another who could haul them. Grant that
there is every element of proof necessary to enable the jury to
determine with reasonable certainty what profits the plaintiff
would have made if he had marketed the crops that went to
waste, did he lay sufficient grounds for the introduction of such

proof? Viewing his testimony in the light of the legal principles above referred to we are constrained to hold that he did not. So far as the loss of hay is concerned, there is additional reason for holding that its value was not the measure of damages. It did not spoil as a direct consequence of the plaintiff's inability to haul it to market in the year in which it was cut and cured, but because of the leaking roof of the barn in which he stored it.

The first three assignments are sustained.

The judgment is reversed and a venire facias de novo awarded.